## Conwell *vs* Brookhart and Wife.

### ERROR TO THE NELSON CIRCUIT.

*Grants. Franchise. Trespass quare clausum fregit. Joinder. Husband and Wife.*

June 13.

JUDGE BRECK delivered the opinion of the Court.

Case stated.

CONWELL brought an action of trespass *quare clausum fregit*, against the defendants in error, for the destruction of his mill dam, and for filling up and obstructing his *mill race*. Judgment for the defendants, upon the instruction of the Court to the jury to find as in case of a *non suit*, and Conwell has brought the case before this Court, for revision.

The testimony, upon the trial, conduced to establish the following facts:

Summary of the facts proved on the trial.

That in 1818, Henry Shoptaugh conveyed to Joseph Forman the use of the water of the East Fork of Cox's Creek as it passed through Shoptaugh's land, and the privilege of building and continuing a mill dam across said creek, a small distance above where the road leaves the Bardstown road and leads up said fork, crosses the same the first time, in any place and in any manner that may best suit said Forman, so as to get the entire benefit

of the water, also the privilege of erecting and continuing a mill race from the said dam, &c. and said Shoptaugh reserves the privilege of fencing on the side of the race, and bridging across it so as not to obstruct the passage of the water or to injure the race. This deed was made in consideration of three hundred dollars, and duly recorded.

Shoptaugh subsequently sold the land to W. Shoptaugh and P. Rowner, W. Shoptaugh to Rowner, who sold a part of it to Forman and part to S. Cassell; that shortly after the conveyance from H. Shoptaugh to Forman the latter constructed a dam as authorized by the conveyance. The banks of the creek, above where the dam was built, being low, gave way and the water passed off in new lateral channels. To prevent this, side dams were constructed: but the bed of the creek having changed, the first dam proving ultimately wholly insufficient, from its locality, to secure the benefit of the water of Cox's Creek, for the use of Forman's mills, a new dam was erected and a new race cut: This new dam was erected upon the land owned by H. Shoptaugh at the date of his conveyance to Forman and upon that portion of the tract which had afterwards been conveyed to Cassell by Rowner. It seems to have been "above where the road that leaves the Bardstown road crosses the creek the first time;" the exact distance does not appear, but it appears to have been about 115 poles from the old dam. The race from the dam or a portion of it was upon the land conveyed by Rowner to Forman. Forman died about 1838, and devised his mills to his two sons, William and Joseph, who had constructed the new dam and race. Subsequent to their construction, they had sold to defendant, Brookhart, that portion of the H. Shoptaugh tract of land which had been owned by and devised to them by their father, and upon which they had constructed the new race. All the deeds of conveyance contained reservations as to the mill dam and race of Forman, and the deed from W. and J. Forman to Brookhart reserves the mill race and the right of keeping it and the mill dam in repair where they then were. This conveyance was made after the new dam was erected and the new race dug.

Conwell
vs
Brookhart, &c.

It appears that the new dam and race were less injurious to the H. Shoptaugh tract of land than the first dam and race, as the effect would be to confine the creek in its original channel and prevent its breaking through its banks.

It was also in proof that Conwell, the plaintiff, had been in possession of the mills, race and dam, for ten or fifteen years, first under the father and subsequently under the sons, of whom he afterwards purchased; that Cassell had died, and his widow had married the defendant, Brookhart, and was herself a defendant: and that the defendants had torn down the new dam and filled up the race; that Cassell was in possession of the tract of land upon which the new dam is erected, and that his children, who were infants, and widow and her husband, the defendant, have since continued in possession. It further appears from the record, that the Court ruled the plaintiff to elect for which trespass he would go, as the pulling down the dam and filling up the race were on different days, and he could only go for one of the trespasses. The plaintiff elected to go for the pulling down the new or upper dam.

Upon this state of the case the Court, on motion of defendants, instructed the jury to find as in case of a nonsuit, and the jury found accordingly. The instruction seems to have been based upon the idea that Forman, having once selected a site for his dam, that he was thereby precluded from ever afterwards changing it. Whether, in that view of the case, the instruction was right will first be considered.

Instructions of
Circuit Court.

The object of the purchase from II. Shoptaugh, by Forman, was the entire benefit of the water of Cox's Creek, so far as it passed through Shoptaugh's land. A very ample consideration seems to have been paid for it, equal to one-half of what the entire fee simple in the whole tract sold for a few years afterwards. The terms of the deed are comprehensive and leave no room for doubt that it was the intention of the parties to secure to Forman the entire benefit of the creek. The terms of the grant are express. If the grant had not also secured to Forman the right of using the requisite means to realise

the main object of the grant, (the use of the water,) the law would have implied the right, and if dams and races were the necessary and proper means for securing to Forman the benefit of the water of Cox's Creek, so far as it passed through the land of Shoptaugh, he would have acquired the right to construct them whether expres· ed in the deed or not.

The doctrine upon this point is very fully examined and illustrated in *Beard* vs *Smith*, (6 *Monroe*, 430.) But the parties have not left to implication the rights of Forman in reference to the means to be used, but the right of building and continuing a dam and a race are expressly granted. "To build and continue a dam a " small distance from where the road, &c. crosses the " creek or fork, the first time, at any place and in any " manner that may best suit said Forman so as to " get the entire benefit of the water." Terms more direct and comprehensive could not well be employed, and as it became entirely impracticable to secure to Forman or his devisees the benefit of the water by the dam first erected, we are very clearly of opinion that he was authorized by the grant to build and continue another at any place and in any manner that might be necessary to get the entire benefit of the water, providing it was upon the land of Shoptaugh when he made the grant, and within a small distance above where the road crosses the fork, &c.

It does not appear that the new dam was not within the requisite distance from where the road crossed the stream, nor would we be understood as deciding that if indispensable to secure the enjoyment of the water, that the grantee would not be authorized to construct a dam even further than a small distance from where the road crosses the creek.

We are not inclined to regard the expression, *a small distance above where the road crosses &c.* as a controlling and unyielding limitation or restriction, when taken in connection with the whole grant. The expressions that immediately follow, very clearly imply that not only the convenience of the grantee, but the securing the entire benefit of the water were to be the paramount considera-

A grantee, by deed, of the privilege of building a dam and cutting a race to turn water to his mill, having made a location of dam and race, which proving ineffectual to obtain the effect of his grantal, allowed to build a new dam and cut a new race to secure the privileges granted.

tions in the situation of the site for the dam, and the mode of building.

But we will pursue this inquiry no further as it is only necessary to decide in this branch of the case that the grantee, having once selected a site and erected his dam, was not thereby restricted to that spot if found impracticable to secure, by such dam, the benefit of the water.

But there are other grounds, upon which it is insisted, the non-suit ought to be sustained:

1st. That the defendants, being husband and wife, cannot be sued together for a joint trespass.

2dly. That the plaintiff misconceived his action—that it should have been case.

Waiving the question whether a misjoinder of husband and wife, as defendants, in an action of trespass, would, under any circumstances, be ground for a non-suit, we are entirely satisfied that upon that ground the motion for a non-suit cannot be sustained in this case. The testimony proves that the trespass was committed jointly by the defendants, and the law is well settled that in such case the action lies against both.

A privilege given by deed, to build a dam on the land of another, and divest the water for the use of grantee, is a franchise, but the dam erected under the privilege is the property of the grantee, and trespass lies for its destruction.

Upon the second point we have had some doubt. It is urged that the privilege of enjoying the benefit of the water is a mere franchise, for the interruption or disturbance of which case is the proper remedy.

The right to the use of the water is no doubt a franchise, and so is the right to erect the dam and prepare the race, but when the dam is erected it becomes the property of him who has the right to construct it. It is not incorporeal in its nature, but is material, tangible as much as a house, and for the destruction of it we have no doubt that trespass would lie. It was so held in *Wilson* vs *Smith and others*, (10 *Windell*, 324.) In that case the Legislature had granted plaintiff the privilege of constructing a dam across a particular stream. He erected the dam and the defendants demolished it, for which he brought an action on the case—held that trespass, not case, was the proper remedy.

In this case, however, the action is trespass *quare clausum fregit*, but we have come to the conclusion the action will lie.

The right to erect and continue the dam very clearly implies and is in effect the right to the exclusive use and possession of so much of Shoptaugh's land as may be necessary for that purpose. When the dam is erected, the ground upon which it stands is thereby appropriated to the use of the builder, and so long as the dam continues in use for the purpose for which it was built, the right of possession of the dam and of the possession and use of the ground which it occupies, is in the grantee. How the dam in this case was constructed, does not appear—whether of wood, or earth, or stone, or in part of each: but no matter how constructed, the principle would be the same. If all of earth, a separate interest in it, the right of possession, and indeed the right of property, in view of the object for which it was erected, would be acquired by Forman. An entry upon it in such case would be an entry upon his possession, and in effect upon his close; an entry for its destruction would be unauthorized, and trespass *quare clausum fregit* would lie.

The case of *Clap* vs *Draper*, (4 *Mass. Rep.* 266,) is somewhat analagous in principle to this. In that case it appears that in 1763, Humphrey was seized of the close in fee, and by deed conveyed the same to Fowler in fee. Fowler, at same time, re-conveyed to Humphrey the trees and timber standing and growing on the land, with liberty to cut and carry away said trees and timber—that the plaintiff held the right conveyed by Fowler to Humphrey, and the defendants the estate that was Fowler's. The defendants had cut some of the trees standing at the date of the original deed. The defendants and those under whom they claimed, had had the herbage upon the close, and those under whom plaintiff claimed had cut and carried away the trees. The plaintiff brought trespass *quare clausum fregit*, and it was held that it could be maintained, and upon the principle that "when a man has a separate interest in the soil, for a particular use, although the right of the soil is not in him, he may maintain trespass *quare clausum fregit.*" The opinion in this case was by a very distinguished jurist, Chief Justice Parsons, who refers to numerous authorities and examines the subject very fully. But it is further insisted by

CONWELL
*vs*
BROOKHART, &c.

The right granted by deed, to build a dam to turn the water of a stream to the use of grantee, implies the right to the use of so much of the land as is necessary to obtain the benefit of the privilege granted.

the counsel for the defendants, that the new dam was not erected for twenty years after the erection of the old one, and that the right of those claiming under Forman, to erect it, if such a right had ever existed after the erection of the first dam, was barred by lapse of time. The testimony conduces to prove the lapse of twenty years from the erection of the first to the erection of the dam in question: but it also appears that the lateral dams had been erected, and near the new dam, from time to time, and within twenty years, and without objection, to keep the water in the original channel. Such continued acts and efforts to secure the enjoyment of the object of the grant of Shoptaugh, having been invariably acquiesced in, as was also the erection of the new dam, by those claiming the land, would, we think, prevent the effect of the lapse of time, if without them and under other circumstances, which we do not admit, it could be rendered available. But in any view of this question, the instruction should not have been peremptory but hypothetical.

In the consideration of this case, we have regarded the plaintiff as entitled to all the rights of Forman, and the defendants as occupying no better attitude than Shoptaugh, if he had continued in possession and never parted with his title.

The judgment is reversed and the cause remanded, that a new trial may be granted, and further proceedings had consistent with this opinion.

*Grigsby* for plaintiff: *Woolley* for defendants.

---

MOTION.

*Case* 113.

*June* 14.

The case stated.